1. A general demurrer to a petition will not be sustained if the facts entitle the plaintiff to any of the substantial relief prayed, and the trial court did not err in overruling general demurrers.
2. Any action or conversation by a duly authorized agent of co-owners with reference to negotiations for the sale of timber would be relevant and germane, and not be subject to special demurrer.
(a) It is not error to overrule special demurrers to allegations of a petition on the ground that such allegations are mere conclusions, where the conclusions are supported by facts alleged.
(b) Special demurrers will be overruled where their grounds are confusing and uncertain, since a demurrer must itself be free from defect.
 No. 16388. NOVEMBER 18, 1948.
Mrs. Hattie Willoughby and 23 others filed in Oconee Superior Court a petition for partition in equity, and for the appointment of a receiver, against George Albert Smith, Miss Myrt Smith, Blakely Durham, Mrs. Susie S. Durham, Mrs. Lottie S. Rogers, Bobby Ray Whitehead (a minor), and Earl Rogers.
The petition was filed June 7, 1948, in time for the regular July term, 1948, of the Oconee Superior Court. A rule nisi was issued, calling upon the defendants to show cause on July 26, 1948, why the prayers of the petition should not be granted. The defendants filed their demurrers, and on the call of the case the demurrers were read and all of them, both general and special, were overruled. The defendant assigned this judgment as error as being contrary to law.
The petition and amendments thereto allege that the petitioners and defendants are the owners of two tracts of land in Oconee County, Georgia, one containing 169 acres, and the other 19 acres; that the petitioners and the defendants, other than Earl Rogers, own undivided interests in said property varying from 1/15 to 1/420; that no practical division of said land can be made among the owners holding such varied interests; and that there is valuable timber on the 169-acre tract, but in recent years the timber has been cut from the 19-acre tract.
The petition further alleges: That Mrs Hattie Willoughby, Mrs. Maggie W. Saxon, and Mrs. Leila W. Osborne acquired their undivided interests in said lands as sole heirs at law of C. D. Willoughby, who died intestate, a resident of Oconee County, *Page 571 
on September 29, 1939, seized and possessed of the undivided interests they now own, and there has been no administration on his estate; that C. D. Willoughby acquired said interest by will of his sister, Miss Mollie Willoughby, said will being recorded in Will Book A, page 219, Ordinary's Office, Oconee County, Georgia.
That the said Mrs. Lessie W. Hoover, Mrs. Bessie W. Dickens, and Mrs. Emma Bell W. Frick acquired their undivided interests as sole heirs at law of their father, Emmett Willoughby.
That the said Mrs. Anna Z. Anderson and Mrs. Agnes A. Ferebee acquired their undivided interests in said property as the sole heirs at law of R. M. Anderson, who died intestate, a resident of Oconee County, in September, 1947, seized and possessed of said undivided interests, and there has been no administration on his estate. The said R. M. Anderson acquired his undivided interests as an heir at law of his mother, Mrs. Belle W. Anderson, who died intestate, a resident of Oconee County, and by virtue of a deed from Charlie W. Anderson to R. M. Anderson dated September 18, 1931.
That the undivided interests of said J. H. and J. W. Morton, Mrs. Katie M. Duggan, Mrs. Maude M. Smith, and Mrs. Nancy Lowe M. LaBoon in said property were acquired by them as sole heirs at law of their mother, Mrs. Mattie W. Morton, who died intestate, a resident of Oconee County, and there has been no administration on her estate.
That the said Mrs. Lillie S. Preston, Miss Myrt Smith, Mrs. Lottie S. Rogers, Mrs. Susie S. Durham, and H. W. Smith acquired their undivided interests in said property as heirs at law of their mother, Mrs. Susan W. Smith, who died intestate, a resident of Oconee County, seized and possessed of an undivided interest in same, and there has been no administration on her estate.
That George Albert Smith acquired his undivided interest in said property by deed from S. H. Smith, dated September 12, 1944, recorded in Deed Book X, pages 475-6, Oconee County Records; and that said S. H. Smith is an heir at law of said Mrs. Susan W. Smith.
That Blakely Durham acquired his undivided interest in said property as the sole heir at law of his mother's interest; his *Page 572 
mother being Mrs. Callie S. Durham, who would have received same had she been in life at the time of the death of Mrs. Susan W. Smith.
That Carl A. Middlebrooks, P. B. Middlebrooks, Robert R. and C. O. Middlebrooks, Mrs. Irene M. Saxon, and Mrs. Maude M. Brooks acquired their undivided interests in said property as heirs at law of their mother, Mrs. Jessie A. Middlebrooks, who acquired her undivided interest as an heir at law of her mother, the said Mrs. Belle W. Anderson. The said Mrs. Jessie A. Middlebrooks died intestate, a resident of Oconee County, and there has been no administration on her estate.
That B. F. Whitehead, Benj. F. Whitehead Jr., Bobby Ray Whitehead, and Mrs. Elsie W. Smith acquired their undivided interests in said property as sole heirs at law of Mrs. Belle M. Whitehead, she being an heir at law of said Mrs. Jessie A. Middlebrooks; and that she died intestate, a resident of Oconee County, and there has been no administration of her estate.
That the property has been managed for the co-owners by J. C. Saxon for the past several years, Saxon looking after the renting of same and paying the taxes thereon.
In paragraph 11, the petition alleges: That in the early winter of 1947 an offer of $8500 was made to Mr. Saxon by C. L. Rhodes of Siloam, Georgia, for the timber on said land. The offer was submitted to the co-owners and was accepted by some of them; that the attorney for the plaintiffs was approached in behalf of the owners to consummate the sale of the timber to Mr. Rhodes; that the attorney advised Mr. Saxon that the purchaser of the timber would want to know exactly what he was buying, and that a survey and plat would be necessary to proceed with the sale. Pursuant to advice of said attorney, the said Saxon employed R. E. Hardigree, surveyor, to survey said property and make a plat of same. The said Hardigree surveyed said property and made a plat, a copy being attached to the petition.
In paragraph 12, the petition alleges: After the plat was made, said attorney notified Rhodes that the owners of the land were ready to proceed with the closing of the timber sale. Rhodes failed to reply to the letters written by the attorney, and during the last of February, Mrs. Maggie W. Saxon wrote Rhodes that there were widows who owned an interest in the timber and *Page 573 
needed what money they could get out of it. On March 30, 1948, Rhodes and his attorney discussed with the plaintiffs' attorney at length the purchase of the timber, and Rhodes' attorney advised the plaintiffs' attorney that he would have to certify to the title, and that Rhodes would deposit the $8500 with the plaintiffs' attorney, and their attorney was to proceed with getting the contract executed. On April 1, 1948, the plaintiffs' attorney received a check signed by C. L. Rhodes for $8500 in payment for said timber.
In paragraph 13, the petition states: The petitioners' attorney, knowing that certain of the owners had the reputation of being contentious, and wanting to be sure that each of the co-owners of the property would execute a timber deed before spending the time and effort required in preparing the same, made a trip to the home of Miss Myrt Smith and Blakely Durham to see whether or not they would be agreeable to the proposition submitted by Rhodes. They refused, giving as their grounds for not being willing to sign a timber deed that they would not agree to sell the timber unless the land went with it.
The petition alleges, in paragraph 14: That on April 5, 1948, the petitioners' attorney was notified that Miss Myrt Smith and Blakely Durham had promised Mrs. Katie M. Duggan, who had come from her home in Charlotte, North Carolina, that they would sign the timber deed, and he was instructed to proceed with the drawing of same and present it to them for execution; that he drew the necessary documents and carried them to their home for their signature, but they refused to see the petitioners' attorney, although he made several trips on different days for that purpose, and on one trip sat parked in front of the residence from 7:30 a. m. to 12:30 p. m., expecting that they would leave the house to milk the cows or do other chores about the house; but they never left the house during that time. That on one occasion said J. C. Saxon went with said attorney to see them when they were visiting at a neighbor's, and when the car drove up in front of the house they were seen scampering out the back door, and they had to leave without contacting them on that occasion.
The petition alleges, in paragraph 15: That each of the owners of said property executed a timber deed (copy of which is attached *Page 574 
and made a part of the petition), except Miss Myrt Smith, Mrs. Lottie S. Rogers, Mrs. Susie S. Durham, and Blakely Durham; and said paragraph further alleged that the apparent reason for their failure to do so was their desire to defeat the petitioners in disposing of their property to the best advantage, even at their own expense, and with a spirit of feud.
In paragraph 16, the petition alleges that said Rogers and Blakely Durham persuaded George Albert Smith to hinder and delay the petitioners in selling their property, which the petitioners believe was against his best judgment, as the petitioners believe him to be a truthful and honorable man, who would not refuse to let his name be used as a party plaintiff to this action, after stating positively that he would do so, unless he had been persuaded by them.
The petition alleges, in paragraph 17: That said George Albert Smith was persuaded to let his name be used as petitioner in an application for an administration on the estate of James M. Willoughby, deceased, when said parties persuading him well knew that said Willoughby died in March, 1884, and that his estate was administered at that time and there is no estate of said Willoughby to be administered at this time. That said Rogers has made an attack on the line between said lands and lands of the George B. Smith estate, which raises an equitable issue over which the court of ordinary has no jurisdiction and only a court of equity can adjudicate. For this reason the petitioners say that George Albert Smith was misled in permitting his name to be used as petitioner in applying for said administration.
The petition alleges, in paragraph 18, that the said Earl Rogers is made a party defendant in this action for the purpose of enjoining him from making a further attack on said line between said property and the lands of George B. Smith estate, and to show cause why the plat attached to the petition is not a correct plat of said property.
The petition further alleges, in paragraph 19 that, in the event said line, as surveyed on January 5, 1948, is decreed to be the property line, said defendants should be required to remove the pasture fence now being used by them from the property, so that the purchaser of said land may have free access to the same *Page 575 
without let or hindrance, and that this be done by proper order of the court.
The petition alleges, in paragraph 20, that because the four named defendants refused to execute said timber deed, the petitioners' attorney was required to return said $8500 to C. L. Rhodes after June 5, 1948, thereby causing a drastic loss to the petitioners.
The petition alleges, in paragraph 21: that, because of the complications herein set out, it is necessary that a receiver be appointed by the court, with full authority to sell said property under order of the court, and that said receiver be empowered to sell said timber separate from said land, as purchasers of timber are not ordinarily interested in buying land, and the petitioners believe that more money can be realized by a separate sale of each; and that said timber, especially, be sold at a private sale, as purchasers of timber prefer buying at private sale and will usually pay more for timber at private sale than at public outcry; and that said receiver be empowered to disburse the proceeds of such sale or sales, paying to the owners their respective shares, after paying the cost of the proceedings.
The petition further alleges: that J. C. Saxon should be permitted to intervene and show any balance he has on hand for the benefit of owners, with a statement of any liabilities or taxes due on said property, as well as any outstanding leases to which said land may be sold subject; that he be required by proper order of the court to pay over to said receiver any balance he may hold for the benefit of said owners; and that the Ordinary of Oconee County be enjoined from passing any orders pertaining to the application for administration on the estate of James M. Willoughby.
It is prayed: that the court assume jurisdiction of the application for administration of the estate of James M. Willoughby, and the ordinary be enjoined from passing an order appointing an administrator; that Earl Rogers be enjoined from threatening the correctness of the line between the land described in the petition and the lands of the estate of George B. Smith; that a receiver be appointed with full authority to sell said property as set out in paragraph 21 of the petition, and that he be authorized to make to the purchaser good and sufficient titles to the *Page 576 
properties sold by proper order of the court, with authority to disburse the proceeds of said sale, and any other moneys that may be paid over to him by the manager of said property; that J. C. Saxon be permitted to intervene in this suit, as set out in paragraph 21 of the petition; and that an order be granted at the proper time providing for the giving of the notices as provided for in the act approved March 24, 1939 (Ga. L. 1939, p. 344).
J. C. Saxon filed his intervention, and alleged: that for several years he had acted as agent for the owners of the land described in paragraph 4 of the petition, and under his agreement with said owners he was required to make settlement with only five of them, viz., Mrs. Hattie Willoughby, J. H. Morton, Mrs. Susie S. Durham, Mrs. Lessie W. Hoover, and Mrs. Anna Z. Anderson, who in turn distributed the respective one-fifth share each to the tenants in common according to the proportion of their undivided interests in said land; that he had made full settlement with said parties up to and including the year 1946; that in the year 1947 he had collected rent for said tenants in common and has incurred certain expenses, and after deducting certain expenses he has on hand a balance of $176.86 to be paid over for the benefit of said tenants in common by proper order of the court; that he has rented said land that is in cultivation for the year 1948 to R. E. Hardigree for $5 and to Mathew Jacks for two bales of lint cotton; and that the only expense to be charged against said rent for 1948 is the State and county taxes for the year, returned in the name of J. C. Saxon, agent, at $1300 valuation, and compensation of the intervenor for managing said property and furnishing farm implements used in producing the crop made by the tenant, Mathew Jacks, as per agreement.
The defendants demurred on the general grounds, and urged that the petition failed to show any equitable cause of action; that plaintiffs are not by their pleadings representatives of said estate and are acting individually as heirs of the estate of James M. Willoughby, deceased, and are without any power or authority to bring said estate into a court of equity; that the petition nowhere states any equitable grounds to take said estate out of the court of ordinary, the court with jurisdiction of said estate, and in which court said estate is now pending for administration. *Page 577 
The defendants also demurred specially to certain paragraphs of the petition, which will be dealt with in detail in the opinion.
To the overruling of the defendants' general and special demurrers they excepted.
1. The defendants (plaintiffs in error) demurred on the general grounds, and urged that the petition failed to show any equitable cause of action; that the plaintiffs (defendants in error) are not by their pleadings representatives of said estate and are acting individually as heirs of the estate of James M. Willoughby, deceased, and are without any power or authority to bring said estate into a court of equity; that the petition nowhere states any equitable grounds to take said estate out of the court of ordinary, the court with jurisdiction of said estate and in which said estate is now pending for administration.
There is nothing in the record that would indicate that the property is in an estate either represented or unrepresented. The petition states clearly that the petitioners and six of the defendants are co-owners or tenants in common of the property in question. The petition alleges that James M. Willoughby died in March, 1884, and that his estate was fully administered. The petition in each instance showed how each of the co-owners acquired their interest, and the only thing in the record which would indicate that the property is in the estate or a part of the estate of James M. Willoughby is the certificate to the plat prepared by R. E. Hardigree, surveyor, dated January 5, 1948, which reads as follows: "State of Georgia Oconee Co. Above plat shows survey of James M. Willoughby Estate containing 188 acres, more or less. Location, on Farmington-Antioch Road." The mere fact that the surveyor designated the land as "James M. Willoughby Estate" would in no way prove title.
Although the plaintiffs prayed that the ordinary be enjoined from passing an order appointing an administrator of the estate of James M. Willoughby, the record shows how each co-owner acquired his or her interest, and in no instance does it indicate that any co-owner acquired his or her undivided interest as heir of James M. Willoughby. In some instances co-owners acquired *Page 578 
their interests or a part of their interests by deeds. The petition clearly states that the plaintiffs and six of the defendants are co-owners or tenants in common of the property in question. The allegations of the petition are sufficient to entitle the petitioners to the relief prayed for. The petition states that James M. Willoughby died in 1884, and that his estate has been administered. Taking this to be true, as must be done on demurrer, the property in question could not be in the estate of James M. Willoughby. The petition alleges that the 30 co-owners or tenants in common are unable to agree as to how the property in question can be disposed of. The allegations further show encroachments by adjoining landowners; that J. C. Saxon, who has been looking after the renting, paying of taxes and other care of said property, will not continue to do so, and in order for the timber or land to be sold at a private sale, a receiver should be appointed to handle the management of the property, pending sale of timber and land, and to preserve the property, collect the rents, and pay the taxes.
The courts have held that an equitable petition will not be dismissed if some of the allegations and prayers call for some of the relief prayed. Parrish v. Rigell, 183 Ga. 218, 225 (2) (188 S.E. 15, 107 A.L.R. 1385).
A general demurrer to a petition will not be sustained if the facts entitle the plaintiff to any of the substantial relief prayed. The grounds of the general demurrers of the defendants are without merit, and the trial judge did not err in overruling said general grounds. Shingler v. Shingler, 184 Ga. 671,672 (2) (192 S.E. 824).
2. In the first and second special demurrers, the defendants demur to paragraphs 11 and 12 of the petition on the grounds, that the facts set out in those paragraphs are not relevant and germane to an administration or partition, that it is not shown by what authority the plaintiffs acted in making the survey, that the price set out is merely a conclusion, and that all the facts as pleaded or conversations as set out are conversations and acts of third persons in no way interested in said estate.
The allegations pleaded in these two paragraphs are relevant and germane, as J. C. Saxon was the duly authorized agent of the co-owners, or a majority of the co-owners, had acted as such *Page 579 
for a number of years, and there is nothing to indicate in these two paragraphs that he was representing the heirs of any estate. Any action or conversation on Saxon's part with reference to negotiations for the sale of the timber would be relevant and germane. Therefore, these two special demurrers are without merit.
(a) The third, fourth, fifth, sixth, and seventh special grounds of demurrer attack paragraphs 13, 14, 15, 16, and 17 of the petition on the basis that the allegations set out in these paragraphs were conclusions, superfluous, and not germane. The conclusions were supported by facts alleged, and since the defendants demurred to each of these paragraphs as a whole, and not to specific portions of these paragraphs, these grounds of special demurrer are without merit. Marietta Realty Development Co. v. Reynolds, 189 Ga. 147 (4) (5 S.E.2d 347); Western Atlantic Railroad Co. v. Roberts, 144 Ga. 250
(86 S.E. 933).
(b) The eighth special ground of demurrer to paragraph 21 of the petition is confusing and uncertain. Since a demurrer itself must be free from fault, such demurrer will be overruled.Marietta Realty Development Co. v. Reynolds 189 Ga. 147
(4) (supra).
Judgment affirmed. All the Justices concur, except Atkinson,P. J., who dissents.